# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30283
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

November 16, 2016

Lyle W. Cayce
Clerk

CLAIMANT ID 100197593; CLAIMANT ID 100200179; CLAIMANT ID 100195755,

     Requesting Parties–Appellants,

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

     Objecting Parties–Appellees.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-1355

Before REAVLEY, OWEN, and ELROD, Circuit Judges.

PER CURIAM:*

     This case arises from the Court Supervised Settlement Program (Settlement Program) established following the Deepwater Horizon incident. Three claimants, [redacted] (collectively, Claimants), are fast-food restaurant franchisors seeking to recover franchise royalty fees they claim to have lost due

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to their franchisees' reduced business following the *Deepwater Horizon* oil spill. After the Settlement Program and the Appeal Panel ruled against each claimant, Claimants sought discretionary review in the Eastern District of Louisiana. The district court allowed the claimants to consolidate their claims. The district court granted the request for discretionary review, and affirmed the Appeal Panel. We also affirm.

**I**

The background of this case has been previously described at length by this court and the district court.[1] At issue in this case is the interpretation of the Economic and Property Damages Settlement Agreement (Settlement Agreement), which the district court approved between the Economic and Property Damages Settlement Class and BP Exploration & Production, Inc., BP America Production Co., and BP p.l.c. (BP). Entities "doing business or operating in the Gulf Coast Areas" are considered part of the class if they meet one of four criteria outlined in the Settlement Agreement. Section 1.2.1 requires, among other things, that the entity "owned, operated, or leased a physical facility in the Gulf Coast Areas." Section 1.2.2 requires the entities be "service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas" during the specified times. The third and fourth criteria are not at issue here.

The Settlement Agreement sets out the procedures for filing and appealing a claim. A claimant must first file its claim with the Claim Administrator of the Settlement Program. The claimant may then appeal a decision by the Settlement Program to the Appeal Panel. The United States

---

[1] *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 901-02 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

District Court for the Eastern District of Louisiana has the discretionary right to review any appeal that follows the Appeal Panel decision. Following review by the district court, parties may appeal to this court.

In this case, the Appeal Panel heard [redacted] appeal during its full en banc session and unanimously rejected [redacted] argument. The Appeal Panel denied 226 other claims from [redacted] on identical grounds. The district court granted discretionary review over all 226 claims upon stipulation by the parties that "the facts, circumstances and issues presented by all 226 claims are identical." The district court then affirmed the Appeal Panel's decision, and Claimants appealed to this court.

## II

Initially, the parties dispute the proper standard of review. BP argues that this court should use the abuse of discretion standard when reviewing all district court orders "disposing of requests for review." "However, the standard of review is effectively de novo" when the district court is "presented with purely legal questions of contract interpretation."[2] Because the interpretation of a settlement agreement is a question of contract law, we review de novo.[3]

## III

Claimants argue that they should recover franchisee royalty payments that were lost as a result of the Deepwater Horizon oil spill. The Settlement Program originally denied [redacted] claim for lost royalties, stating that, as a franchisor, it was not part of the class because it did not meet the requirements of Section 1.2.1 of the Settlement Agreement. Specifically, Section 1.2.1 requires entities to have "owned, operated, or leased a physical facility in the Gulf Coast Areas." The Settlement Program defines "Facility" as a "(a)

---

[2] *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015) (citing *United States v. Delgado-Nuñez*, 295 F.3d 494, 496 (5th Cir. 2002).

[3] *Id.*

3

separate and distinct physical structure or premise; (b) [o]wned, leased or operated by the Business Entity; (c) [a]t which the Business Entity performs and/or manages its operations." The Settlement Program determined that [redacted] claim did not meet all three requirements of the facility definition.

[redacted] appealed to the Appeal Panel, forgoing the argument that it was a class member under Section 1.2.1, and instead alleged that it was a class member under Section 1.2.2. This section includes in the class "service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas" during specified times. [redacted] argued to the Appeal Panel, and Claimants continue to argue to this court, that Section 1.2.2 includes franchisors that have franchisees within the Gulf Coast Areas, regardless of the location of the franchisor.

In asserting that franchisors are included in Section 1.2.2, Claimants contend that

> "the Settlement Agreement's choice to 'includ[e] owner-operators' in Section 1.2.2 must have been an affirmative statement that a service business with owner-operators, such as franchisees, in the Gulf Coast Areas is included in the class, regardless of whether that service business also had traditional employees in the Gulf."

Claimants reach this conclusion through several interpretive steps. First, as [redacted] argued to the Appeal Panel, "service businesses" in Section 1.2.2 can refer to the franchisors, as they "provide vital services to the restaurants that bear its brand." Second, Claimants reject the Appeal Panel's conclusion that "full-time employees (including owner-operators)" refers to owner-operators as a sub-set of employees. Rather, they argue that owner-operators are "persons other than employees who perform services on behalf of the claimant in the Gulf, such as appellant's franchisees." Third, the claimants

4

seem to assert that the franchisors own or control franchisees who are owner-operators of Gulf franchises. ("Appellants . . . are class members under Section 1.2.2 because they had franchisees (*i.e.*, owner-operators) in the Gulf Coast Areas . . . ."). Finally, claimants argue that the requirement to perform services while "physically present in the Gulf Coast Areas" is satisfied by the franchise owner-operators in the Gulf. In sum, the claimants ask this court to read Section 1.2.2 as "service businesses with . . . owner-operators" that are in the Gulf Coast Areas, which should include franchisors with franchisees that are in the Gulf Coast Areas.

The Appeal Panel rejected this argument, stating that the "word 'including' in the phrase 'full-time employees (including owner-operators)' necessarily refers to a sub-set of employees." It reasoned that "words coming after 'including' are to be understood as relating back to the class or category which preceded it, so as to provide a sub-set, or one or more examples, of the larger whole." The district court's decision did not address this argument, but affirmed the Appeal Panel based on the franchisors being located outside the Gulf Coast, noting that the local franchisees could assert claims, but the national franchisor could not.

For its part, BP argues that the "more natural reading is that 'owner-operator' refers to a business with no workers other than the owner his or herself" so that "one-person outfits" can be included in the settlement class.

This court need not rely on the Appeal Panel's precise interpretation of "including owner-operators." Rather, we may affirm on any grounds supported by the record, even if not relied upon by the district court.[4]

---

[4] *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 307 (5th Cir. 1997); *Sojourner T v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992).

The Settlement Agreement's four categories of entities each impose a geographic restriction on putative class members. Each requires some physical presence in the Gulf Coast. Claimants try to satisfy this requirement through their franchisees. However, franchisees are generally third-party operators, not part of the larger franchisor.[5] Indeed, BP argued before the Appeal Panel, the district court, and this court, that the franchisees are legally independent businesses, and thus that Claimants cannot rely on them to satisfy the geographic requirement. At no point have Claimants denied the franchisees' independence. Instead, they linguistically connect the franchisors and franchisees by stating that "Appellants are in the class because *their* franchisees" are owner-operators, and because "they *had* franchisees" in the Gulf Coast. Claimants emphasize this connection throughout their brief, but they never address the legal relationship between the franchisors and the franchisees.

Section 1.2.2's geographic restriction cannot be satisfied by relying on legally independent businesses. The phrase "service businesses with one or more full-time employees (including owner-operators)" at a minimum requires that the employees or owner-operators are part of the service business.

This conclusion is buttressed by looking at other parts of the Settlement Agreement. Exhibit 5 of the Settlement Agreement specifically contemplates compensating a "Multi-Facility Business," defined as a business entity that "maintained Facilities in more than one location and had at least one Facility within the Gulf Coast Areas." The exhibit further specifies details about compensating multi-facility businesses whose headquarters are outside the Gulf Coast. Claimants cannot avail themselves of this part of the Settlement

---

[5] *See Commercial franchise*, BLACK'S LAW DICTIONARY 773 (10th ed. 2014) ("A franchise using local capital and management by contracting with third parties to operate a facility identified as offering a particular brand of goods or services.").

Agreement because the Settlement Program determined that they did not have a "facility" in the Gulf Coast, a finding that Claimants did not appeal.

The Settlement Program has even more specifically addressed franchisors in a Final Policy statement defining "Facility," stating that "a franchise location is not a Facility of the franchisor Entity if the franchisor does not own or lease the real property on which the franchise is located." Claimants contend that this does not limit their ability to join the class, because "facility" appears in Section 1.2.1, and they seek inclusion under Section 1.2.2. However, that the Settlement Program specifically addressed franchises weighs against Claimants' interpretation of 1.2.2.

In their reply brief, Claimants contend that BP is judicially estopped from arguing that franchisors "who 'do not operate the restaurants' managed by their franchisees must be excluded from the Economic Class." Claimants rely on a redacted Appeal Panel decision in which BP did not appeal an award to a franchisor. The decision is not in the record. Even if we were to consider the decision, we could not evaluate its factual context. "Judicial estoppel is an equitable doctrine invoked by a court at its discretion."[6] For this circuit to apply judicial estoppel, "the estopped party's position must be 'clearly inconsistent with its previous one,' and second, 'that party must have convinced the court to accept that previous position.'"[7] Neither requirement is satisfied here, as the lack of a record prevents this court from reaching either conclusion.

Franchisees located in the Gulf Coast Areas are free to seek recovery under the Settlement Agreement. However, Section 1.2.2 cannot be read to

---

[6] *New Hampshire v. Maine*, 532 U.S. 743, 750 (2001) (internal quotation marks omitted) (citation omitted); *accord Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

[7] *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (quoting *Hall*, 327 F.3d at 396).

allow franchisors outside of the Gulf to join the class by relying on independent franchisees that are located in the Gulf. Claimants' interpretation of Section 1.2.2 is foreclosed by the Settlement Agreement language.

## IV

Claimants also argue that [redacted] in particular should receive lost franchise royalty fees because [redacted], unlike [redacted] and [redacted], owns and operates at least one non-franchised location in the settlement area. Claimants contend that this location makes [redacted] a "member of the class under Section 1.2.1." As a member of the class, they continue, [redacted] can claim entitlement to *all* damages described in the Settlement Agreement: "[l]oss of income, earnings or profits suffered" as a result of the *Deepwater Horizon* incident. Claimants argue that this loss of income should include the loss of royalty payments from *franchised* [redacted] locations.

Claimants support this argument with an Eligibility Notice issued by the Settlement Program that awards [redacted] $83,216.34 for losses associated with the location it owns and operates. The claimants argue that this Eligibility Notice "undisputedly" makes [redacted] a member of the Economic Class. The Eligibility Notice at issue is not in the record. The Settlement Program issued the Eligibility Notice on April 1, 2016, nearly one month after the district court issued its order. Claimants have moved to take judicial notice of the Eligibility Notice or, in the alternative, supplement the appellate record. This court carried that motion with the case.

Claimants did not make this argument at either the Appeal Panel or district court, but instead raise it for the first time on appeal to this court. As the Appeal Panel noted, [redacted] relied "exclusively on the contention that it satisfie[d] the alternative definition of a qualifying Entity set out in Section 1.2.2 of the Settlement Agreement." Similarly, Claimants' brief to the district court relies exclusively on its interpretation of Section 1.2.2. Moreover, the

district court, when consolidating the cases, required that the parties stipulate that the 226 claims presented identical issues. Throughout the process, this case has focused on the correct interpretation of Section 1.2.2. Claimants contend that they could not have raised the argument earlier because the Settlement Program did not release the Eligibility Notice until after the district court's decision, and thus, they were not aware that [redacted] was a member of the Economic Class.

This court does "not consider issues raised for the first time on appeal except in extraordinary instances when such consideration is required to avoid a miscarriage of justice."[8] This is not such a case. [redacted] theory does not depend on the recently issued Eligibility Notice; [redacted] could have maintained the argument that it operates at least one Gulf Location throughout the proceedings.

Because we do not consider the issue, we deny Claimants' motion to take judicial notice, or in the alternative, for supplemental designation.

\* \* \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[8] *Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000).