# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30964

United States Court of Appeals
Fifth Circuit

**FILED**

February 17, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100009540,

Requesting Party - Appellant Cross-Appellee

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP, P.L.C.; BP
AMERICA PRODUCTION COMPANY,

Objecting Parties - Appellees Cross-Appellants

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-3726

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

ARTCC Enterprises, LLC appeals the district court's denial of its request
for discretionary review of a decision of the administrators of the *Deepwater
Horizon* Economic and Property Damages Settlement ("E&P Settlement").
Specifically, ARTCC contests the amount of compensation it was awarded on
its claim for economic loss, filed through the settlement program.    BP

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 15-30964

Exploration & Production, Incorporated, *et al.* (collectively "BP") cross appeals the district court's order granting ARTCC's motion for an extension of time in which to file the present appeal.  For the reasons that follow, we AFFIRM.

## I.     BACKGROUND

ARTCC operated an oyster processing business under the name Bayou Oyster, located in Houma, Louisiana.  On May 27, 2009, ARTCC purchased the assets of Bayou Oyster from Crab Connection, LLC.  The transaction was structured such that Crab Connection retained and was responsible for Bayou Oyster's liabilities.  ARTCC, d/b/a Bayou Oyster, commenced operations on or about June 2009, but was forced to close its doors on May 5, 2010, due to the cessation of oyster harvesting following the *Deepwater Horizon* oil spill.

On June 5, 2012, ARTCC filed a "Start-Up Business Economic Loss" claim for compensation with the Court Supervised Settlement Program ("CSSP"), which had been created pursuant to the E&P Settlement.  For businesses that shut down due to the oil spill, the E&P Settlement establishes different compensation formulae for claimants filing as a "Failed Business" and those filing as a "Failed Start-Up Business."  The difference between the two is clearly defined in the E&P Settlement:  the former is defined as "an entity that commenced operations *prior to* November 1, 2008," while the latter is "an entity that commenced operations *on or after* November 1, 2008."  ARTCC represented that it had commenced business operations on July 1, 2009.  While this claim was pending, ARTCC filed another claim with the CSSP in October 2012, this time using the "Failed Business Economic Loss" form.  On this form, ARTCC stated that it had commenced operations on May 27, 2009.  The CSSP concluded that this second claim was duplicative and sent ARTCC a "Notice of Duplicate Claim."  ARTCC submitted a third form to the CSSP in February 2013, a "Failed Business Economic Loss Sweat Equity Sworn Written Statement."  Notably, compensation for "sweat equity" is available only to

No. 15-30964

"Failed Start-Up Businesses." This form listed yet another date for ARTCC's commencement of operations: June 20, 2009.

On March 28, 2013, the CSSP Claims Administrator issued an Eligibility Notice, which determined that ARTCC was entitled to $29,567.81 under the E&P Settlement, an amount that was substantially offset by the approximately $375,000 in payments that ARTCC had already received from BP through loss compensation programs that preceded the establishment of the CSSP. The award amount was derived using the "Failed Start-Up Business" compensation framework.

ARTCC requested reconsideration, and, on August 16, 2013, the CSSP issued a Post-Reconsideration Eligibility Notice, confirming its award. ARTCC appealed to the CSSP Appeal Panel. The E&P Settlement lays out a specific appeal procedure, which requires the claimant and BP to exchange and submit to the Appeal Panel respective initial and final proposals for the compensation amount the claimant should receive. Although the parties are free to compromise, without an agreed resolution, the Appeal Panel "must choose to award the Claimant either the Final Proposal by the Claimant or the Final Proposal by the BP Parties but no other amount"—the so-called "baseball process."

ARTCC filed an initial proposal of $5,000,000. In an attached memorandum, ARTCC argued that Bayou Oyster was a preexisting company, not a failed start-up. The memorandum also explained how ARTCC had calculated its losses to arrive at its proposed award. Significantly, ARTCC's methodology diverged in numerous ways from the E&P Settlement, taking into consideration factors that are not part of either the "Failed Start-Up" or "Failed

No. 15-30964

Business" compensation frameworks.[1]   BP, by contrast, offered an initial proposal of $29,567.81, the same amount the Claims Administrator had determined that ARTCC was eligible to receive.  In response, ARTCC made a final proposal of $3,432,737.  As its final proposal, BP again offered $29,567.81.  On October 30, 2014, the CSSP Appeal Panel affirmed the determination of the Claims Administrator, awarding ARTCC $29,567.81.

In its decision, the Appeal Panel explained that because ARTCC began its operations in June 2009 and ceased operations in May 2010, the Claims Administrator properly calculated its losses using the Failed Start-Up framework to derive the award of compensation to which ARTCC was entitled.  Moreover, ARTCC had argued that other components should have been inserted into the award calculation, but those components are not permitted or authorized by the E&P Settlement and were correctly excluded.

ARTCC, proceeding without counsel, sought discretionary review from the district court, which it denied in an order dated August 27, 2015.  On October 26, 2015, an attorney moved to appear as counsel of record for ARTCC and filed a notice of appeal of the district court's order.  On the same day, ARTCC moved under Federal Rule of Appellate Procedure 4(a)(5) for an extension of time to file the appeal on the grounds that, despite concerted efforts, it had been unable to secure counsel to take an appeal within the 30-day window permitted under Rule 4.  A corporation "cannot appear [in this court] in proper person as a corporation or through its corporate officer," but

---

[1] The memorandum, in fact, purported to justify two possible awards, neither of which were $5,000,000.  The first number, $7,846,256, took into consideration the age and years until retirement of ARTCC's President, Art Chauvin, factors that have no basis in the E&P Settlement.  The second figure, $3,432,737, claimed to be based on the "settlement accounting protocol for established businesses," and multiplied ARTCC's projected EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization) by an industry multiple of "7."  But that multiple is not found anywhere in the "Failed Business" framework.

"only through an attorney admitted to practice before this court." *Southwest Express Co. v. ICC*, 670 F.2d 53, 56 (5th Cir. 1982). By order dated November 19, 2015, the district court granted ARTCC's motion, finding that ARTCC had shown excusable neglect for failing to timely file and deeming timely ARTCC's October 26, 2015 notice of appeal. BP filed a cross-appeal, challenging this order. The district court consolidated both appeals.

## II.     APPELLATE JURISDICTION

Because "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional,'" *Bowles v. Russell*, 551 U.S. 205, 209 (2007), we must first resolve whether we have appellate jurisdiction to hear ARTCC's appeal. In a civil case involving private parties, a would-be appellant must file a notice of appeal within 30 days of the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). A district court, however, may, upon motion, extend the deadline up to an additional 30 days if the movant shows "excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A).

We review a district court's ruling on a Rule 4(a)(5) motion based on a determination of excusable neglect for an abuse of discretion. *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007). However, we "give[] more leeway to a district court's determination of excusable neglect when the district court grants the motion for an extension of time." *Id.* (citing *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998)). "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice," "the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

No. 15-30964

Given the leeway granted to district courts under this standard, the minimal delay and prejudice involved, and the excuse provided by ARTCC, we conclude that the district court did not abuse its discretion in granting the motion to extend the time for filing a notice of appeal. *See Stotter*, 508 F.3d at 820. Accordingly, we have jurisdiction to hear ARTCC's appeal.

## III.    STANDARD OF REVIEW

The parties dispute the standard of review applicable to the district court's order declining review of the CSSP's compensation determination. BP contends that the order is reviewed for abuse of discretion. ARTCC, on the other hand, argues that the standard of review should be something like the *de novo* standard applied to rulings on a motion for summary judgment, relying on *Johnson v. BP Exploration & Prod. (In re Deepwater Horizon)*, 786 F.3d 344 (5th Cir. 2015). *Johnson* is inapposite. It addressed a situation where a party challenged not a determination enforcing a settlement agreement, but the validity of the agreement itself. We stated in *Johnson* that because "parties must be allowed an evidentiary hearing on disputed issues of the validity and scope of the agreement," a district court may only summarily enforce the agreement if there are no material facts in dispute and the party seeking to enforce the agreement is entitled to enforcement as a matter of law. 786 F.3d at 354. Here, ARTCC does not dispute the validity of the E&P Settlement, only the CSSP's compensation determination made pursuant to its terms.

Accordingly, the abuse of discretion standard applies. *Steering Comm. v. BP Exploration & Prod. (In re Deepwater Horizon)*, 785 F.3d 1003, 1011 (5th Cir. 2015) ("The Agreement gives the district court discretion to decide whether it will review an award at all. Thus, the district court's denials of review are reviewed for abuse of discretion.").

No. 15-30964

## IV.   ANALYSIS

Factors we consider in deciding whether the district court abused its discretion include whether the CSSP's claim determination clearly contradicted or misapplied the settlement agreement, *In re Deepwater Horizon*, 641 F. App'x 405, 409 (5th Cir. 2016), or whether the claim determination involved an issue of interpretation of the settlement agreement that is frequently recurring and has divided the appellate panels of the CSSP, *In re Deepwater Horizon*, 632 F. App'x 199, 203–04 (5th Cir. 2015).

We discern no error in the CSSP's interpretation or application of the E&P Settlement.  ARTCC argues that the CSSP should have classified it as a continuing business and applied the compensation framework for a "Failed Business," rather than a "Failed Start-Up Business."  This argument fails for several reasons.

First, although the actual date of ARTCC's commencement of operations appears to be a moving target, all of the various dates listed by ARTCC in its submissions to the CSSP occur *after* November 1, 2008.  ARTCC avers that the E&P Settlement "lacks precision as to how to determine a claimant's category," but it could not be more exact on this point.  A "Failed Business" is an entity that commenced operations *before* November 1, 2008, whereas a "Failed Start-Up Business" is an entity that commenced operations *after* November 1, 2008.

Second, as the Appeal Panel decision points out, ARTCC's multi-million dollar compensation request was not based on criteria permitted or authorized by the E&P Settlement.  In the "baseball process" utilized in CSSP administrative appeals, the Appeal Panel must select either the claimant's or BP's final proposal, but no other.  BP's proposal was the only one tethered to criteria in the E&P Settlement.  Consequently, the Appeal Panel could not have sided with ARTCC without itself violating the E&P Settlement.

7

No. 15-30964

Finally, the E&P Settlement makes clear that the proper claimant is the "entity" asserting a business economic damages claim, and not, as ARTCC contends, the *business* (here, Bayou Oyster) that is operated by that entity. There is no dispute that ARTCC purchased only the assets of Bayou Oyster, while liabilities remained with its predecessor-in-interest, Crab Connection. It is well-established that the life of an entity *continues* in a stock sale, whereas assets are transferred to a *different* entity in an asset sale. *See, e.g.*, *Diebold Found., Inc. v. Commissioner of Internal Revenue*, 736 F.3d 172, 175 (2d Cir. 2013) (distinguishing between "asset" and "stock" sales); BASIC LEGAL TRANSACTIONS § 28:7 (2011) (explaining that "[i]n an assets sale, the seller is the corporate entity," whereas "in a sale-of-stock transaction, all assets owned by the corporation automatically become the purchaser's assets, since they are held in the corporate entity's name").

ARTCC attempts to circumvent this principle by relying on the successor liability doctrine recognized in Louisiana, which under certain circumstances treats an asset purchaser as a "mere continuation" of the seller corporation such that the purchaser-successor should be held liable for its predecessor's liabilities. But the purpose of the "'mere continuation' exception to the rule of non-liability is to prevent two corporations from merging in effect while limiting the liability of the surviving corporation by structuring the transaction as a sale of assets." *Bank of Am., N.A. v. Garden Dist. Pet Hosp., Inc.*, No. CV 15-1386, 2016 WL 952250, at *7 (E.D. La. Mar. 14, 2016) (internal quotations, alteration, and citation omitted). The doctrine has no relevance here where ARTCC is seeking solely to step into the shoes of Crab Connection in order to claim a benefit to which it would otherwise not be entitled. In any event, the E&P Settlement is governed by general maritime law, not Louisiana law, and ARTCC has not shown that maritime law recognizes such a doctrine, let alone applies it in the novel way ARTCC urges here.

8

ARTCC does not otherwise contend that the compensation award calculated under the "Start-Up Business" compensation framework is erroneous. Therefore, under this prong of our analysis, the district court did not abuse its discretion in declining to review the CSSP decision.

As for the second prong, ARTCC has adduced no evidence that its individual compensation determination involves an issue of the settlement agreement's interpretation that is frequently recurring and has split internal appeal panels within the CSSP. The rhetorical questions raised in ARTCC's brief regarding the manner in which the E&P Settlement evaluates claims by successor-in-interest entities do not stand in for competent proof. In *In re Deepwater Horizon*, 632 F. App'x at 203–04, claimants developed a record demonstrating that the issue in the case had repeatedly arisen in claims litigation and that there were conflicting appeal panel decisions generated by the issue. ARTCC has offered no such evidence.

Ultimately, ARTCC's appeal illustrates this Court's previous observation that:

> If the discretionary nature of the district court's review is to have any meaning, the court must be able to avoid appeals like this one which involve no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise the correctness of a discretionary administrative decision in the facts of a single claimant's case. *See In re Deepwater Horizon,* 785 F.3d 986, 999 (5th Cir. 2015) ("We do not intend any part of this opinion to turn the district court's discretionary review into a mandatory review. To do so would frustrate the clear purpose of the Settlement Agreement to curtail litigation.").

*In re Deepwater Horizon*, 641 F. App'x at 410.

AFFIRMED.