# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 8, 2017

Lyle W. Cayce
Clerk

————

No. 16-30482

————

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

       Requesting Parties - Appellees

v.

CLAIMANT ID 100169608,

       Objecting Party - Appellant

                      Consolidated w/ No. 16-30822 and No. 16-30823

CLAIMANT ID 100169608,

       Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

       Objecting Parties - Appellees

————————————

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-2087
USDC No. 2:16-CV-5705
USDC No. 2:16-CV-5706

————————————

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

Before STEWART, Chief Judge, and KING and DENNIS, Circuit Judges.

PER CURIAM:*

Appellant Adams Produce Company, LLC submitted to the Court Supervised Settlement Program three claims for damages relating to the Deepwater Horizon oil spill. The district court denied one of the claims on its merits after granting discretionary review. The district court declined to exercise its discretion to review the other two claims, both of which had previously been denied by the Court Supervised Settlement Program. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In these consolidated appeals, we are once again asked to review claims relating to the Economic and Property Damages Settlement Agreement (Settlement Agreement), which was entered into between Appellees BP Exploration & Production, Inc., BP America Production Company, and BP, P.L.C. (collectively, BP) and the Economic and Property Damages Settlement Class following the Deepwater Horizon oil spill. The claimant, Adams Produce Company, LLC (Adams LLC), is a Delaware limited liability company. Adams LLC was formed in July 2010 and began operations in September 2010 after it received, following an asset transfer, certain assets from Adams Produce Company, Inc. (Adams Inc.), a Delaware corporation. Importantly, Adams LLC was formed and began operations after the Deepwater Horizon oil spill began on April 20, 2010.

At the time of the oil spill, Adams Inc. had operated for more than 50 years, distributing food to restaurants located throughout Alabama, Florida,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

and Mississippi.[1]   In September 2010, Adams Inc. approved a plan of liquidation and also executed an asset contribution agreement with Adams LLC ("Asset Transfer Agreement").  As part of the Asset Transfer Agreement, Adams Inc. transferred to Adams LLC "certain assets to be used by [Adams LLC] in connection with the operation of [its business]."  Specifically, the Asset Transfer Agreement listed which assets would be transferred to Adams LLC and which assets would be retained by Adams Inc.  For example, the Asset Transfer Agreement excluded several motor vehicles from being transferred to Adams LLC.  The Asset Transfer Agreement also listed the liabilities that Adams Inc. would transfer to Adams LLC and stated that, except for those liabilities, Adams LLC "shall not assume and shall not be responsible or liable for any [c]laims, commitments, [c]ontracts, obligations or other [l]iabilities of [Adams Inc.] or any stockholder of [Adams Inc.]"  In November 2010, Adams Inc. was dissolved.

In July 2013, Adams LLC submitted to the Court Supervised Settlement Program (CSSP) three separate Business Economic Loss (BEL) claims for facilities located in Destin, Florida; Biloxi, Mississippi; and Pensacola, Florida. In August 2015, the CSSP denied the claim related to the Destin facility for the following reason:

> We cannot allow your claim for the reason that we are unable to determine causation and/or calculate a compensation amount under the BEL frameworks because you were not doing business or operating in the Gulf Coast Areas or Specified Gulf Waters at the time of the Oil Spill, April 20, 2010.

---

[1] Adams Brothers Produce Company, Inc. (Adams Brothers Inc.) was originally incorporated in Delaware in 1959.  In 2008, Adams Brothers Inc. changed its name to Adams Produce Company, Inc.

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

Adams LLC then sought reconsideration, which was denied in September 2015.

Following the denial of the Destin claim, Adams LLC sought review by the Appeal Panel. On December 16, 2015, the Appeal Panel reversed the denial of the claim, concluding that Adams LLC was a class member of the Settlement Agreement and, therefore, entitled to pursue the claim. The Appeal Panel's analysis was based on the theory that the general business of "Adams Produce" continued both pre- and post-oil spill, and although the form of the entity changed from Adams Inc. to Adams LLC via an asset transfer, the actual business enterprise did not change. Thus, according to the Appeal Panel, Adams LLC could in fact pursue the claim because the "Adams Produce" business enterprise did not change following the asset transfer.

BP then sought discretionary review in the district court of the Appeal Panel's decision. BP argued that Adams LLC was a new entity that was not in existence at the time of the oil spill, and therefore, Adams LLC did not have a claim under the BEL framework. In March 2016, the district court granted the request for discretionary review and reversed the Appeal Panel's decision. The district court largely adopted the arguments of BP, reasoning that it was undisputed that Adams LLC did not exist prior to the oil spill and that Adams LLC is a wholly separate and distinct entity from Adams Inc. Critical to the district court's reasoning was the type of transaction—an asset sale—used by Adams LLC to transfer the underlying food business operations from Adams Inc.[2]

---

[2] In full, the district court held:

IT IS ORDERED that the request for discretionary review is hereby GRANTED. The claimant here is Adams Produce Company, LLC, an entity formed on July 8, 2010. It is undisputed that Adams Produce Company, LLC did not exist or operate the subject business at the time of the Oil Spill, but

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

While the above appeals process was unfolding for the Destin facility, the claims for the Biloxi and Pensacola facilities followed slightly different procedural routes. First, on September 16, 2015, the CSSP denied the Biloxi and Pensacola claims for the same reason that the Destin claim had been denied. After re-review and reconsideration were denied, in separate decisions the Appeal Panel upheld the denials of the Biloxi and Pensacola claims. While the Appeal Panel decisions for the Biloxi and Pensacola claims recognized that Adams LLC had succeeded before the Appeal Panel for its claim for the Destin facility, they rejected the reasoning of the prior Appeal Panel. Adams LLC sought discretionary review by the district court for both claims. In June 2016, the district court declined to exercise its discretion to review the claims, effectively affirming the Appeal Panel decisions denying Adams LLC's claims for its Biloxi and Pensacola facilities. Notably, by June 2016, the district court had already granted discretionary review and denied Adams LLC's claim for the Destin facility.

Adams LLC filed a timely notice of appeal for each claim. The claims were subsequently consolidated.

---

rather the business was operated by a wholly separate and distinct entity, Adams Produce, Inc. Adams Produce Company, LLC's involvement with this business did not come about until it bought substantially all of the assets of Adams Produce, Inc. in September, 2010, well after the Oil Spill. The transaction was a sale of assets, not a sale of the company's stock. Further, it was not merely a change in corporate organization. The transaction was something other than a single entity merely changing its legal form of organization; it was a sale of assets from one entity to a separate entity with a different set of owners. Under these circumstances, the Claims Administrator was correct to deny this claim on grounds that the claimant entity was not operating at the time of the Oil Spill. The decision of the Appeal Panel is therefore REVERSED, and the Claims Administrator's denial is REINSTATED.

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

## II.  STANDARD OF REVIEW

Our review of the district court's judgment is for abuse of discretion.  *See Claimant ID 100197593 v. BP Expl. & Prod., Inc.*, -- F. App'x --, 2016 WL 7029142, at \*1 (5th Cir. Nov. 16, 2016) (per curiam).  "'However, the standard of review is effectively de novo' when the district court is 'presented with purely legal questions of contract interpretation.'"  *Id.* (quoting *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015)).[3]

## III.  ADAMS LLC'S CLAIMS WERE PROPERLY DENIED

At the outset, it is instructive to state several principles upon which both parties agree.  First, neither party disputes that a business claimant that did not exist prior to the oil spill cannot recover under the Settlement Agreement.[4]

---

[3] We have not yet directly addressed whether the abuse of discretion standard of review varies depending on whether the district court granted or denied a request for review, and neither party addresses this point.  *Compare Claimant ID 100197593*, -- F. App'x --, 2016 WL 7029142, at \*1 (reviewing the district court's order after the district court granted discretionary review); *with Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, -- F.3d --, 2017 WL 540999, at \*2 (5th Cir. Feb. 9, 2017) (per curiam) (reviewing the district court's denial of discretionary review and stating that "[w]e generally assess whether the district court abused its discretion by looking to 'whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement.'" (quoting *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016))).  Although these consolidated appeals present a situation in which the district court granted discretionary review for one claim but denied it for the other two claims, we need not and do not address any potential nuances.  Even assuming that our review of the district court's judgment following the grant of discretionary review is more lenient, Adams LLC's claims all fail because, as discussed below, the district court did not misinterpret the Settlement Agreement.

[4] Although Adams LLC does not directly explain the reasoning supporting this principle, BP does include an argument about why an entity that did not exist until after the oil spill cannot recover.  Under the terms of the Settlement Agreement, an entity that meets one of the geographical descriptions is a class member only if its claims "meet the descriptions of one or more of the Damage Categories."  However, an entity that did not exist until after the oil spill cannot meet one of the damage categories for a BEL claim because each of the compensation frameworks requires the entity to have existed at the time of the oil spill.  Accordingly, such an entity would not be included as a class member.  Although Adams LLC does not directly address that argument, it does state that the "parties agree that the threshold issue is whether this Business Economic Loss Claimant existed at the time of the

Second, neither party disputes that, under certain circumstances, a business claimant that reorganizes or changes its form may still recover even if the change occurs after the oil spill (*i.e.*, the newly organized entity is still considered to be the same business claimant as the pre-spill entity for the purpose of establishing a BEL claim under the Settlement Agreement).

Putting aside the unique background on how Adams LLC came into existence, Adams LLC would not be a class member and could not recover on its claims because it did not exist at the time of the oil spill.  However, Adams LLC argues that, even though it technically did not exist in its current form at the time of the oil spill, it is simply an uninterrupted continuation of the underlying business in a different form, and therefore, it should be able to recover on a claim for the underlying food business.  Put another way, Adams LLC's argument is that the asset transfer and change in business form (from Adams Inc. to Adams LLC) should have no effect on its ability to establish a BEL claim, and instead, the Settlement Agreement looks to whether the actual food business was operating at the time of the oil spill.  This court recently addressed a similar question in an unpublished opinion.  In *Claimant ID 100009540 v. BP Exploration & Production, Inc.*, -- F. App'x --, 2017 WL 664026 (5th Cir. Feb. 17, 2017) (per curiam), the claimant entity had purchased in May 2009, via an asset sale, an oyster processing business that had previously been operated by a different entity.  *Id.* at *1.  One of the issues in that case was whether the claimant entity should be classified as a failed start-up business or a failed business.  *Id.* at *3.  This issue turned, in part, on whether the purchasing entity, which did not begin operating the oyster processing

---

Oil Spill.  BP admits that no express exclusion applies and that the issue of class membership and eligibility is answered by this question."

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

business until after it purchased the assets from a different entity, should be treated as the claimant or whether the oyster processing business, which had been operating prior to the asset sale, should be treated as the claimant even though it had been sold between two different entities as part of an asset sale. *Id.* at \*3–4.  This court rejected the argument that the oyster processing business was the claimant, concluding instead that the Settlement Agreement "makes clear that the proper claimant is the 'entity' asserting a business economic damages claim, and not, as [the claimant] contends, the business (here, [the oyster processing business]) that is operated by that entity." *Id.* at \*4.  In making this determination, this court further recognized that "[i]t is well-established that the life of an entity *continues* in a stock sale, whereas assets are transferred to a *different* entity in an asset sale." *Id.*

We agree and, applying the same principles from *Claimant ID 100009540*, conclude that Adams LLC's claims were properly denied because Adams LLC did not exist at the time of the oil spill.  The Settlement Agreement makes clear that, under these circumstances, Adams LLC is the proper business claimant, not the underlying food business that Adams LLC operated. The Settlement Agreement does not support the interpretation, advocated by Adams LLC, that a valid BEL claim is based on the underlying business operations regardless of how that business was transferred between two distinct entities.  Instead, the Settlement Agreement's definitions of business claimant[5] and entity,[6] as well as the compensation frameworks, clearly support

---

[5] "Business Claimant" is defined as "an Entity . . . which . . . is an Economic Class Member claiming Economic Damage allegedly arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident."

[6] "Entity" is defined as "an organization or entity . . . operating or having operated for profit or not-for-profit, including a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture or an unincorporated association of any kind or description."

8

the interpretation that Adams LLC is the "entity" and proper "business claimant." Accordingly, because Adams LLC, the business claimant, did not exist at the time of the oil spill, it cannot recover on its BEL claims regardless of the fact that the underlying food business was operated by a different entity, Adams Inc., at the time of the oil spill. In other words, the two distinct entities in this case, Adams LLC and Adams Inc., cannot combine to form one business claimant with one BEL claim simply because Adams Inc. transferred substantially all of its assets to Adams LLC, which continued to operate the underlying food business.

Adams LLC's arguments to the contrary are unavailing. Adams LLC argues that this interpretation creates an "artificial distinction" between Adams LLC and Adams Inc. and improperly focuses on form over substance. We disagree. The substance of the transaction—an asset transfer—is critical to the outcome of this case. Although substantially all of Adams Inc.'s assets and liabilities were transferred as part of the transaction, it is undisputed that Adams Inc. retained certain assets and liabilities. Although there may be certain business reorganizations or transactions in which the same business claimant and BEL claim continue throughout, the asset transfer used in this case does not present such a situation. Simply put, Adams Inc. and Adams LLC are two distinct entities, and the asset transfer that occurred here was not just a change in form. *See Claimant ID 100009540,* 2017 WL 664026, at *4. Just as the purchasing entity in *Claimant ID 100009540* was a different "entity" than the selling entity for the purpose of establishing a claim under the Settlement Agreement, Adams LLC is a distinct "entity" from Adams Inc.

9

No. 16-30482
cons w/ No. 16-30822 and No. 16-30823

for the purpose of establishing a BEL claim.[7]  Accordingly, Adams LLC cannot establish a BEL claim, under the plain terms of the Settlement Agreement, by relying on the fact that a distinct entity, Adams Inc., existed and operated the underlying food business at the time of the oil spill.  Instead, given that Adams LLC did not come into existence until after the oil spill, the district court properly concluded that it could not recover under the Settlement Agreement.

## IV.  CONCLUSION

For the foregoing reasons, the judgments of the district court are AFFIRMED.

---

[7] Adams LLC argues that the record does not support the district court's characterization of the transaction as an asset sale.  According to Adams LLC, the record does not show that money was directly exchanged as part of the Asset Transfer Agreement and, therefore, the district court erred in characterizing the transaction as an asset sale.  However, even assuming that Adams LLC did not directly pay Adams Inc. as part of the Asset Transfer Agreement, the principles from *Claimant ID 100009540* would still apply to this case.  As discussed above, it is undisputed that, as part of the Asset Transfer Agreement, certain assets and liabilities remained with Adams Inc.  Adams LLC and Adams Inc. are not the same "entity."