# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-31079

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2017

Lyle W. Cayce
Clerk

CLAIMANT ID 100153748,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:16-CV-13932

Before KING, JONES, and ELROD, Circuit Judges.

PER CURIAM:*

Appellant Louisiana Tax Credit Finance, LLC filed a business loss claim under the Deepwater Horizon Economic and Property Damages Settlement Agreement. It described its business as "buying and selling film tax credits." Although its claim was initially allowed, that decision was later reversed by an Appeal Panel that found that Appellant was a "Financial Institution" ineligible to receive compensation under the Settlement Agreement. Appellant sought

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

discretionary review of that decision in the district court, but the district court declined review. Appellant now asks us to hold that the district court abused its discretion when it denied review of the denial of Appellant's claim. We AFFIRM.

## I.

This case is the latest in a series of appeals related to the settlement that resulted from the *Deepwater Horizon* oil spill. *See In re "Deepwater Horizon,"* 641 F. App'x 405, 406 n.1 (5th Cir. 2016) (per curiam) (listing eight other cases as of March 2016). The *Deepwater Horizon* was "a semi-submersible offshore drilling rig," the explosion of which "led to eleven deaths, dozens of injuries, and a massive discharge of oil into the Gulf of Mexico that continued for nearly three months." *In re Oil Spill by Oil Rig "Deepwater Horizon,"* 910 F. Supp. 2d 891, 900 (E.D. La. 2012), *aff'd sub nom.*, *In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Litigation ensued and was consolidated in the District Court for the Eastern District of Louisiana. *See id.* The parties eventually agreed to a global settlement in April 2012. *See id.* at 902. In December 2012, the district court approved the Economic Property Damages Settlement Agreement ("Settlement Agreement"), which resolved certain claims for economic loss and property damage resulting from the oil spill. *See id.* at 964.

## A.

Under the Settlement Agreement, an individual or entity must meet two requirements in order to qualify as a member of the class: a geographic requirement and a damages requirement. *See In re Oil Spill*, 910 F. Supp. 2d at 903 ("The putative class consists of private individuals and businesses defined by (1) geographic bounds and (2) the nature of their loss or damage."). Individuals and entities that satisfy these definitions are entitled to file a claim with the Court Supervised Settlement Program ("CSSP"), which processes claims and calculates awards using standardized formulas. *See id.* at 904.

The Settlement Agreement excludes some otherwise eligible individuals and entities from the class definition, leaving them ineligible to receive awards through the CSSP. These "exclusions are based on the substantive nature of the business, not the legal or juridical form of that business." Among these excluded entities are "Financial Institutions," which the Settlement Agreement defines as follows:

> Financial Institutions as identified in the NAICS codes listed on Exhibit 18, which include, by way of example, commercial banks; savings institutions; credit card issuers; credit insurers; factors or other sales finance entities; financial or investment advisers or portfolio managers; fund managers; investment banking entities; lending institutions; real estate mortgage or lending entities; brokers or dealers of securities, commodities, commodity contracts or loans; securities or commodities exchanges; entities serving as custodians, fiduciaries or trustees of securities or other financial assets; ***or entities engaged in other financial transaction intermediation***, processing, reserve or clearinghouse activities, provided, that the following shall not be excluded solely pursuant to this Section 2.2.4.1 unless they are subject to a different exclusion: standalone ATMs, credit unions, pawn shops, businesses engaged predominantly in making payday loans or paycheck advances and businesses that sell goods and services and offer financing on these purchases to their customers.

(emphasis added).

The Settlement Agreement provides that the CSSP "shall determine the appropriate NAICS[1] code for [an] Entity based on its review of (a) the NAICS code shown on an Entity Claimant's 2010 tax return, (b) 2010 business permits or license(s), and/or (c) other evidence of the Entity's activities necessary for the Settlement Program to determine the appropriate NAICS code." Although

---

[1] "NAICS" is an initialism for "North American Industry Classification System." NAICS consists of numeric codes that federal statistical agencies use to classify business establishments in order to collect, analyze, and publish data related to the U.S. economy. *See* U.S. Census Bureau, *Introduction to NAICS* (May 10, 2017), www.census.gov/eos/www/naics/2017NAICS/2017_NAICS_Manual.pdf.

the CSSP "will prioritize 2010 tax records," it will "use any and all information available to determine the correct NAICS code." The "appropriate" or "correct" NAICS Code is the one "that most accurately describes the Entity's primary business activities . . . during the operative . . . [p]eriods."

The CSSP receives claims submitted by class members and "calculates awards using public, transparent frameworks that apply standardized formulas derived from generally accepted and common methodologies." *In re Oil Spill*, 910 F. Supp. 2d at 904. A court-approved Claims Administrator manages the CSSP and makes an initial determination on every claim. *See In re Deepwater Horizon*, 616 F. App'x 699, 700 (5th Cir. 2015) (per curiam). That determination may then go through multiple levels of review. *See id.* Initially, a claimant may request that the Claims Administrator reconsider the determination. The claimant or BP[2] may also appeal to an Appeal Panel.[3] Finally, either party may seek review in the district court, which has the discretion to accept or deny review. *See id.* at 700–01.

**B.**

Appellant Louisiana Tax Credit Finance, LLC ("LTCF") has a rather uncommon line of business: it purchases and sells film tax credits. Louisiana makes these credits available to filmmakers to encourage them to produce films in the state. *See* La. Stat. Ann. § 47:6007(A). But most companies that receive the credit have no Louisiana tax liability to offset. Although they spend money in the state, they do not earn any there. Because this would otherwise render the credits practically worthless, the Louisiana legislature allowed them to be sold for cash by making them certificated and transferable. *See id.* § 47:6007(C)(4). This is where LTCF comes in. It acts as an intermediary,

---

[2] We refer to Appellees BP Exploration & Production, Incorporated; BP America Production Company; and BP, P.L.C. collectively as "BP."

[3] BP may appeal only when the value of a claim exceeds $25,000.

buying the credits wholesale from film production companies—who cannot use them—and then reselling smaller increments at markup to individual Louisiana taxpayers—who can.

LTCF filed a claim with the CSSP on December 2, 2012, setting in motion the protracted legal process that resulted in this appeal. On the claim form, LTCF listed two different business names: (1) "Film Production Capital" and (2) "Louisiana Tax Credit Finance LLC dba Film Production Capital." It identified its business as "buying and selling film tax credits." The NAICS code that LTCF reported on its claim form—454390 ("Other Direct Selling Establishments")—is not listed in Exhibit 18 of the Settlement Agreement, which lists the NAICS codes for excluded financial institutions. The CSSP subsequently determined that LTCF was an eligible class member and awarded LTCF over $3.8 million in economic losses on July 10, 2013.

BP appealed the award to an Appeal Panel. It argued (as relevant here) that LTCF was ineligible under Section 2.2.4.1 of the Settlement Agreement because it was a financial services business. In support of that argument, BP attached screenshots from Film Production Capital's website describing the organization as "a full-service entertainment finance company which specializes in providing loans collateralized by state tax incentives." LTCF countered that Film Production Capital was actually a group of distinct business entities operating under a common trade name. According to LTCF, the information on Film Production Capital's website did "not reflect facts pertinent solely to LTCF." Moreover, LTCF argued that it should receive the same treatment as its "four identical sister entities" operating under the Film Production Capital umbrella—all of whose claims had been paid. LTCF attached a number of exhibits to its opposition, none of which directly addressed the precise nature of LTCF's relationship to Film Production Capital.

The panel reversed the initial determination and decided in BP's favor. It unanimously found that LTCF was excluded from the class as a "Financial Institution" under Section 2.2.4.1. Although the panel acknowledged that LTCF used NAICS code 454390 on its tax returns, it concluded that that code was "[c]learly . . . not descriptive of [LTCF's] business."

LTCF requested discretionary review in the district court. While that request was pending, the district court approved Policy 495 and remanded LTCF's claim to the CSSP for reprocessing.[4] The Claims Administrator again denied the claim under Section 2.4.2.1 of the Settlement Agreement. It determined that the proper NAICS code for LTCF was 522298 ("All Other Nondepository Credit Intermediation")—a code that identified LTCF as a financial institution under Exhibit 18 to the Settlement Agreement.

LTCF requested that the Claims Administrator re-review its denial. In support of its request, LTCF largely reiterated its prior arguments regarding Film Production Capital, stating that "the information contained on [Film Production Capital's] website used by the [Claims Administrator] relates to . . . the business activity of seven (7) entities that fall under the [Film Production Capital] trade name umbrella that originate and administer . . . financing." LTCF also attached affidavits from its commercial banker and accountant testifying that they understood LTCF's primary line of business to be "the acquisition of transferable tax credits to be sold at a retail margin to its taxpayer customer base." The Claims Administrator once again denied LTCF's claim on December 2, 2015, citing the Appeal Panel's prior decision. Claimant

---

[4] "Policy 495 consists of five methodologies pursuant to which the Claims Administrator is to calculate claimant compensation . . . ." *In re Deepwater Horizon*, 858 F.3d 298, 300 (5th Cir. 2017). We subsequently held that four of those methodologies were inconsistent with the Settlement Agreement. *See id.* LTCF has made no argument concerning Policy 495 in this appeal.

then requested a review of the re-review, which the Claims Administrator denied, again citing the Appeal Panel's prior decision.

LTCF appealed that denial to an Appeal Panel. The parties largely repeated their previous arguments. However, in reply to BP's opposition, LTCF provided a chart identifying all 42 companies associated with Film Production Capital. LTCF also provided affidavits from its owners, who testified that "LTCF is a separate and distinct entity from Film Production Capital, L.L.C. ('FPC'). FPC does not have an ownership interest in LTCF. LTCF does not have an ownership interest in FPC." The Appeal Panel upheld the denial of LTCF's claim on June 16, 2016. In its decision, the panel concluded that LTCF did "an about-face" on appeal by "disavow[ing] all of its previous submissions denominating itself as 'doing business as Film Production Capital.'" The panel refused to allow LTCF to disavow its self-designation at such a late stage. Because no party disputed that Film Production Capital was an excluded entity, the panel upheld the Claims Administrator's decision and denied the appeal.

LTCF went once more to the district court, seeking discretionary review of this latest denial. The district court denied that request, and LTCF appealed to this court.

## II.

Section 6.6 of the Settlement Agreement gives the district court the "discretionary right to review any Appeal determination." Thus, we review the district court's denial of review for an abuse of discretion. *See, e.g.*, *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017). In making that determination, we ask "whether the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016)

(quoting *In re Deepwater Horizon*, 641 F. App'x at 409–10). Nonetheless, we have been careful not to transform the district court into a court of errors for the CSSP. The district court need not "grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement." *Id.* at 316. The district court does not abuse its discretion when it declines to review a decision that presents "no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon*, 641 F. App'x at 410). On the other hand, denying review of a significant and recurring issue that has split numerous Appeal Panels might be an abuse of discretion. *See id.*; *cf. In re Deepwater Horizon*, 632 F. App'x 199, 203–04 & n.3 (5th Cir. 2015) (per curiam) (holding that district court abused discretion by denying review where "over thirty Appeal Panels ha[d] heard appeals on th[e] issue" and issued conflicting decisions).

## III.

We have no trouble concluding that LTCF has not shown an abuse of discretion. LTCF claims that the CSSP misapplied the Settlement Agreement in three ways. First, LTCF claims that the CSSP incorrectly considered the activity of closely-related but distinct entities in determining LTCF's NAICS code. Second and relatedly, LTCF claims that the CSSP selected the wrong NAICS code. Third, LTCF claims that because its identical sister entities' claims were granted and not appealed, the CSSP's determination created disparate treatment between identical entities. We consider and reject each of these arguments in turn.

## A.

LTCF argues that the Appeal Panel improperly considered the activities of the other Film Production Capital entities in determining the appropriate

NAICS code for LTCF. BP makes two arguments in response. It contends that the Appeal Panel properly considered the activities of the other Film Production Capital entities because, in BP's view, the Settlement Agreement requires the CSSP to apply the Banking Industry exclusion without regard to legal distinctions between associated entities. It also argues that it was not an abuse of discretion for the district court to deny review of the Appeal Panel's decision to treat LTCF and Film Production Capital as a single entity.

BP's first argument is wrong. The Settlement Agreement "makes clear that the proper claimant is the 'entity' asserting a business economic damages claim." *Claimant ID 100009540 v. BP Expl. & Prod., Inc.*, 680 F. App'x 263, 267 (5th Cir. 2017) (per curiam). Under the Settlement Agreement, an "entity" is "an organization or entity . . . operating or having operated for profit or not-for-profit, including a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture or an unincorporated association of any kind or description." The definition of entity speaks entirely in the singular. It does not provide for related but legally distinct entities to file a single claim. *See BP Expl. & Prod., Inc. v. Claimant ID 100169608*, 682 F. App'x 256, 261 (5th Cir. 2017) (per curiam); *Claimant ID 100197593 v. BP Expl. & Prod., Inc.*, 666 F. App'x 358, 362 (5th Cir. 2016) (per curiam). Section 2.2.4 merely directs the CSSP to exclude entities "based on the substantive nature of the business, not the legal or juridical form of that business." The exclusions of Section 2 still apply to "*entities*." The directive that exclusions be "based on the substantive nature of the business, not the legal or juridical form of that business" is not an order to disregard legal distinctions *between entities*. Thus, Section 2.2.4 of the Settlement Agreement does not

require the CSSP to consider related but legally distinct entities for the purposes of determining exclusions.[5]

Even though LTCF wins that argument, it has still failed to show an abuse of discretion. The Appeal Panel did not treat LTCF and Film Production Capital as a single entity because it concluded, *as a matter of law*, that Section 2.2.4 mandated such treatment. Rather, the Appeal Panel noted that over nearly four years of claim processing, LTCF had repeatedly represented itself as "Louisiana Tax Credit Finance LLC dba Film Production Capital," including in sworn affidavits from its owners and operators. Only in its second appearance before an Appeal Panel did LTCF finally submit some evidence that it was a separate and distinct business entity. At that late stage, the Appeal Panel refused to allow LTCF "to disavow all of its previous submissions denominating itself as 'doing business as Film Production Capital.'" Although LTCF attempted to brush this off as a clerical error, the Appeal Panel rejected that argument. It noted that LTCF's "knowledgeable and sophisticated representatives . . . never undertook to correct or otherwise depart from that self-designation" until its second appeal.

This is hardly the type of "pressing question" that we have held the district court must review. *See Claimant ID 100212278*, 848 F.3d at 410. LTCF is not challenging the Appeal Panel's interpretation or implementation of the Settlement Agreement. Rather, it is challenging the factual and credibility determinations that led the Appeal Panel to conclude that LTCF and Film Production Capital were a single entity. The district court decidedly does not

---

[5] Although LTCF devotes a portion of its reply to arguing against piercing the corporate veil, BP made no such argument in its brief. As a result, we do not consider the arguments for or against piercing the corporate veil in this case. *Cf., e.g.*, *United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009) ("As a general rule, a party waives any argument that it fails to brief on appeal.").

abuse its discretion when it declines to review factual and credibility determinations that affect a single case.[6] *See In re Deepwater Horizon*, 641 F. App'x at 410 ("If the discretionary nature of the district court's review is to have any meaning, the court must be able to avoid appeals like this one which involve no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise the correctness of a discretionary administrative decision in the facts of a single claimant's case.").

Thus, the district court did not abuse its discretion when it declined to review the Appeal Panel's determination that LTCF and Film Production Capital were the same entity.[7]

**B.**

LTCF further argues that the CSSP chose an inappropriate NAICS code. However, the determination of the appropriate NAICS code for a single entity claimant is not the type of "pressing question" that warrants district court review. *See Claimant ID 100212278*, 848 F.3d at 410. Rather, it is precisely the type of discretionary factual determination that we have held the district court need not review. *See In re Deepwater Horizon*, 641 F. App'x at 410; *cf. Claimant ID 100212278*, 848 F.3d at 410–11 (holding that district court did not abuse discretion by denying review of "factual determination that [claimant's] stores were not tourism businesses within the meaning of the Settlement Agreement"). Even assuming that the CSSP's determination was incorrect— and that LTCF's description of its business is accurate—we have no trouble concluding that the district court did not abuse its discretion because the correct NAICS code for LTCF is still a financial industry NAICS code.

---

[6] That is especially so where, as here, any alleged factual errors are the result of a sophisticated claimant's failure to bring facts to the CSSP's attention until late in the claims process.

[7] LTCF did not dispute below or on appeal that Film Production Capital is an excluded entity.

Neither the parties nor the court has discovered a specific NAICS code for entities that purchase and sell film tax credits. When LTCF originally filed its claim, it listed NAICS code 454390 ("Other Direct Selling Establishments"). The CSSP ultimately concluded that 522298 ("All Other Nondepository Credit Intermediation") was the correct code—largely based on its conclusion that LTCF and Film Production Capital were a single entity and that Film Production Capital was undisputedly "an excluded financial [entity] under *more than one* of the NAICS Codes listed in Exhibit 18." (emphasis added). On appeal, BP argues that, under LTCF's description of its business, the appropriate NAICS code is 523910 ("Miscellaneous Intermediation").

It is unsurprising that no NAICS code fits a business that buys and sells film tax credits perfectly. But BP has the better argument here. LTCF's preferred NAICS code 454390 ("Other Direct Selling Establishments") describes entities "primarily engaged in retailing merchandise . . . via direct sale to the customer." U.S. Census Bureau, *2017 NAICS Manual*, at 378, www.census.gov/eos/www/naics/2017NAICS/2017_NAICS_Manual.pdf. One example of such establishments is "[d]irect selling locker meat provisioners." *Id.* Tax credits, however, are not "merchandise." "Merchandise" is "a moveable object involved in trade" and "does not [include] money, stocks, bonds, notes, or other mere representatives or measures of actual commodities or values." Black's Law Dictionary (10th ed. 2014). The film tax credits at issue are not "moveable objects" but, rather, financial abstractions. They have no existence in the physical world apart from certificates, which are legal documents certifying ownership, not credits themselves.

The CSSP's NAICS code—522298 ("All Other Nondepository Credit Intermediation")—is a bit closer, but still not quite right. This includes "establishments primarily engaged in providing nondepository credit," such as "Agricultural credit institutions" and "Commodity Credit Corporation[s]."

12

Assuming that LTCF actually is a separate entity from Film Production Capital and that its only line of business is buying and selling tax credits, this code fails to describe its business. Buying and selling tax credits does not involve "providing nondepository credit," and LTCF insists that it does not engage in lending of any sort.

BP argues that NAICS code 523910 ("Miscellaneous Intermediation") is the appropriate code for LTCF. This includes "establishments primarily engaged in acting as principals . . . in buying or selling of financial contracts generally on a spread basis. Principals are investors that buy or sell for their own account." Tax credits are not, strictly speaking, financial contracts, as LTCF points out. But neither are tax liens. Yet "[t]ax liens dealing" is listed as an example of "Miscellaneous Intermediation" in Exhibit 18 to the Settlement Agreement. Tax credits are surely more similar to tax liens than they are to "locker meat." Both tax credits and tax liens are financial abstractions that, loosely speaking, may be considered financial contracts. Indeed, the film tax credits at issue are certificated and transferable like many of the financial contracts listed under NAICS code 523910. *See* La. Stat. Ann. § 47:6007(C)(4). Thus, NAICS code 523910 is the proper code for a business that buys film tax credits from film producers for its own account in order to sell them at a mark-up to individual taxpayers.

As a result, even if we assume that the CSSP chose an inappropriate NAICS code and that that error could merit review, the district court did not abuse its discretion. LTCF still would have been excluded if the CSSP had chosen the correct code, meaning that its appeal to the district court would have been futile. The district court does not abuse its discretion when its review would lead to the same result, albeit under different reasoning.

## C.

Finally, LTCF informs us that the CSSP granted the claims of its four identical sister entities, accepting the NAICS code that LTCF listed on its claim. We have noted that "[i]t may be an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if 'the resolution of the question will substantially impact the administration of the Agreement.'" *Claimant ID 100212278*, 848 F.3d at 410 (quoting *In re Deepwater Horizon*, 632 F. App'x at 203–04). LTCF cannot avail itself of this language for two reasons. First, besides LTCF and its sister entities, there are likely very few current and future claimants who buy and sell film tax credits in the eligible geographic area defined in the Settlement Agreement. Deciding which NAICS code properly applies to such a claimant will not "substantially impact the administration of the Agreement." Second, BP elected not to appeal the awards to the other Film Production Capital entities. As a result, LTCF has not identified a split among Appeal Panels on this issue, simply a few unappealed Claims Administrator determinations that conflict with the determination in this case. This is hardly sufficient to merit district court review.

Furthermore, accepting LTCF's argument would upend the balance struck by the Settlement Agreement. "[T]he clear purpose of the Settlement Agreement [is] to curtail litigation." *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015). LTCF argues that the disparate treatment among its sister entities mandates district court review in this case. We decline to impose a rule that requires the district court to review denied claims whenever similar entities' claims were granted and not appealed. Far from curtailing litigation, such a rule would lead to prophylactic appeals and follow-on litigation in the district court, with all its attendant costs. This would impose significant legal costs on all parties, delay the processing of claims, and overburden the CSSP.

Like any other litigant, BP should be able to pick its battles and conserve its resources, even if doing so allows some arguably wrong decisions to stand. It need not appeal such decisions in order to avoid district court litigation later.

Moreover, just because the claims of sister entities were allegedly wrongly decided does not mean that this claim has to be decided in the same fashion. Indeed, in BP's view, LTCF comes out ahead as a result of BP's decision not to appeal because awards were issued for four claims that should have been denied. Given our analysis in Section III.B above, it certainly seems possible—even likely—that LTCF's sister entities would have lost any appeal.

In sum, the district court did not abuse its discretion by declining to review LTCF's claim, even though LTCF's allegedly identical sister entities received awards pursuant to unappealed claims.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.