# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2019

Lyle W. Cayce
Clerk

—————

No. 18-30394

—————

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Requesting Parties-Appellants,

v.

CLAIMANT ID 100281817,

Objecting Party-Appellee.

————————————

Appeal from the United States District Court
for the Eastern District of Louisiana

————————————

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

An NBA player named David West negotiated a contract with the New Orleans Hornets before the Deepwater Horizon oil spill. He received every penny specified in that contract both before and after the spill. Still, the Claims Administrator for the Deepwater Horizon Economic and Property Damages Settlement Agreement awarded West almost $1.5 million in "lost" earnings. The Settlement Appeal Panel affirmed, and the district court denied discretionary review. We reverse.

I.

The Deepwater Horizon oil rig exploded on April 20, 2010. At that time, David West played professional basketball for the New Orleans Hornets (now

known as the New Orleans Pelicans). He was four years into a five-year contract. That contract paid West a total of $45 million. But it was "front-loaded," meaning West's annual salary decreased every year of the contract—including from 2009 to 2010. West received all $45 million owed to him under the contract.

Still, he submitted an "Individual Economic Loss Claim" under the Deepwater Horizon Economic and Property Damages Settlement Agreement ("Settlement").[1] These claims can be submitted only by individuals "who seek compensation for lost earnings from employment *due to or resulting from the [Deepwater Horizon] Spill.*" Settlement Agreement Ex. 8A at 1 (emphasis added). And the Individual Economic Loss Claim form states, on its very first page, that it covers only "individuals who have experienced income losses *caused by the Spill.*" Individual Economic Loss Claim Form 1 (emphasis added). It also required West to certify "that the information provided in [his] Claim Form [was] true and accurate to the best of [his] knowledge." *Id.* at 15. Based on that attestation, the Claims Administrator used West's tax forms to calculate his "lost earnings." The Claims Administrator determined West was entitled to $1,412,673.06. BP contested that determination because West "lost" nothing—he received all the money promised by the front-loaded terms of his pre-spill contract.

BP first sought reversal before the Appeal Panel. It argued West was not entitled to any award under the Agreement because (1) Individual Economic Loss Claimants can recover only if they experienced a loss caused by the spill, and (2) West cannot satisfy the Settlement's attestation

---

[1] In previous cases, we have discussed the Deepwater Horizon oil spill and resulting settlement at great length. *See, e.g.*, *In re Deepwater Horizon* (*Deepwater Horizon III*), 744 F.3d 370 (5th Cir. 2014); *In re Deepwater Horizon* (*Deepwater Horizon II*), 739 F.3d 790 (5th Cir. 2014); *In re Deepwater Horizon* (*Deepwater Horizon I*), 732 F.3d 326 (5th Cir. 2013). We therefore need not recount that history here.

No. 18-30394

requirements. The Appeal Panel affirmed West's award. It concluded West established causation because his employer—the Hornets—benefited from presumed causation under the Settlement. It therefore held West needed nothing more to claim "lost" earnings.

BP asked the district court to review the award decision. But the court denied discretionary review without explanation. BP timely appealed.

## II.

Our review is for abuse of discretion. *Holmes Motors, Inc. v. BP Expl. & Prod., Inc.*, 829 F.3d 313, 315 (5th Cir. 2016). The district court abuses its discretion when "the decision not reviewed by the district court actually contradicted or misapplied the Settlement Agreement, or had the clear potential to contradict or misapply the Settlement Agreement." *Ibid.* (quotation omitted). It's likewise "an abuse of discretion to deny a request for review that raises a recurring issue on which the Appeal Panels are split if the resolution of the question will substantially impact the administration of the Agreement." *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (per curiam) (quotation omitted). In contrast, denying "a request for review that involve[s] no pressing question of how the Settlement Agreement should be interpreted or implemented, but simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case," does not amount to an abuse of discretion. *Ibid.* (quotation omitted) (alterations in original).

That said, the Settlement Agreement is a contract. The proper interpretation of it "is a question of law." *In re Deepwater Horizon* (*Deepwater Horizon I*), 732 F.3d 326, 345 (5th Cir. 2013). And making "an error of law constitutes an abuse of discretion." *In re Deepwater Horizon*, 785 F.3d 986, 999 (5th Cir. 2015). Accordingly, when the district court is "presented with purely

3

No. 18-30394

legal questions of contract interpretation," our review is *de novo.*  *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).

A.

We start with the contractual provisions governing West's claim.  West submitted a specific type of claim—an "Individual Economic Loss Claim."  It is defined to include a claim brought by an individual described in Exhibit 8A. Exhibit 8A, in turn, provides the following description for Individual Economic Loss Claims:

> Individual economic loss claims are claims by **Individuals**, who shall be defined as (i) Natural Persons who (a) satisfy (or whose employers satisfy) the Class Definition and (b) whose *losses* are not excluded from the Class and (ii) who seek compensation for *lost earnings* from employment *due to or resulting from* the [Deepwater Horizon oil spill] . . . .

Settlement Agreement Ex. 8A at 1 (emphases added).  The claim form that West submitted similarly stated:  "The Individual Economic Loss Claim is for individuals who have experienced *income losses caused by the Spill.*" Individual Economic Loss Claim Form 1 (emphasis added).  Thus, these types of claims may be brought only by individuals who experienced losses and seek compensation for lost earnings caused by the oil spill.  We've previously interpreted the Agreement as allowing "proof of loss as a substitute for proof of causation."  *In re Deepwater* (*Deepwater Horizon III*), 744 F.3d 370, 375 (5th Cir. 2014).  But what do "loss" and "lost earnings" mean?

They are undefined in the Settlement, so we look to their plain meaning. *See BP Expl. & Prod., Inc. v. Claimant ID 100094497*, 910 F.3d 797, 801 (5th Cir. 2018).  "Loss" typically means "the disappearance or diminution of value . . . in an unexpected or relatively unpredictable way."  *Loss*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Economic Loss*, BLACK'S LAW DICTIONARY (10th ed. 2014) (explaining "economic loss" means "monetary loss such as lost wages or lost profits" and usually "refers to a type of damages

4

recoverable in a lawsuit"). And "lost earnings" refers to "[w]ages, salary, or other income that a person could have earned if he or she had not lost a job, suffered a disabling injury, or died." *Earnings*, BLACK'S LAW DICTIONARY (10th ed. 2014). These definitions suggest "loss" or "lost earnings" are unexpected diminutions in wages or other income that could otherwise support a claim for civil damages.

West argues these plain meanings of "loss" and "lost earnings" do not apply. Instead, he says, his "loss" is proved by the seven-step mathematical equation that appears in Exhibit 8A. But that puts the cart before the horse. Only claimants who suffer unexpected damages can submit an Individual Economic Loss Claim; then they use Exhibit 8A's equation to determine the value of that claim. The defined terms in the seven-step equation make that clear. "**Claimant Lost Earnings**" is defined as "[t]he claimant's **Expected Earnings** from all **Claiming Jobs** minus the claimant's **Actual Earnings** from all **Claiming Jobs** during the **Compensation Period**, minus any **Offsetting Earnings**." Settlement Agreement Ex. 8A at 4. "**Expected Earnings**" refers to the "[c]laimant's earnings in the **Compensation Period** in the **Claiming Job** *that would have been expected in the absence of the [Deepwater Horizon] Spill.*" *Id.* at 5 (emphasis added). West expected to earn in the absence of the spill precisely what he did earn after it. He therefore did not suffer unexpected damages, and Exhibit 8A does not apply to him.[2]

---

[2] Because West's expected earnings equal his actual earnings based on Exhibit 8A's definitions, West ignores them. (Indeed, he does not even include the Agreement's definition of "Expected Earnings" in his brief.) He instead implies "Expected Earnings" is defined in Exhibit 8A as a calculation based on what he earned in previous time periods, not what his five-year contract provided. And applying that "definition," West's expected earnings would be higher than his actual earnings. But we cannot focus exclusively on Exhibit 8A's calculations and ignore its list of defined terms and accompanying definitions. Instead, we must read the Agreement's provisions "as a whole," *Claimant ID 100094497*, 910 F.3d at 801, and harmonize the Agreement—giving effect to all its terms "without rendering any of them

No. 18-30394

This interpretation comports not only with the Agreement's text, but also with our precedent. As we explained in *Deepwater Horizon I*, when interpreting the Agreement, we must give "some weight" to "what damages recoverable in civil litigation actually are." 732 F.3d at 339. And in civil litigation, the plaintiff can recover damages only after suffering actual losses. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (explaining the court's role is limited to "provid[ing] relief to claimants, in individual or class actions, who have suffered, or will imminently suffer, actual harm").

B.

West did not suffer actual and unexpected "losses" or damages. In 2010, he earned exactly what he was entitled to receive under his contract. The fact that West received less money in 2010 than in 2009 does not mean he "lost" anything or was "damaged" in any way. It means only he agreed to a front-loaded contract. And he did so many years before the Deepwater Horizon catastrophe.

The decision to give money to West "actually contradicted or misapplied the Settlement Agreement." *Holmes Motors*, 829 F.3d at 315 (quotation omitted). Our holding to that effect answers a "purely legal question[] of contract interpretation." *In re Deepwater Horizon*, 785 F.3d at 1011. Accordingly, "remand is unnecessary." *Aransas Project v. Shaw*, 775 F.3d 641, 658 (5th Cir. 2014) (per curiam); *cf. United States v. Douglas*, 696 F. App'x 666, 669 (5th Cir. 2017) (per curiam) ("In certain circumstances, however, the appellate court may determine that remand of a particular case is unnecessary and instead, simply reverse and render."); *United States v. Hernandez-*

---

meaningless or superfluous," *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004). The fact that the definition of "Expected Earnings" cannot be squared with the calculation as applied to West's claim further illustrates the compensation formula does not apply to him. It applies only to eligible individuals—those who suffered unexpected damages.

*Guevara*, 162 F.3d 863, 878 (5th Cir. 1998) ("[W]e need not waste judicial resources by remanding for what undoubtedly would be a rote resentencing.").

The judgment of the district court is REVERSED.

No. 18-30394

HAYNES, Circuit Judge, concurring and dissenting:

I concur in the portion of the judgment reversing the district court's denial of review and the determination by the majority opinion that the particular sums awarded, which rely upon the contractual losses, reflect a "loss" that was not caused by the oil spill. However, I would stop there and remand the case to the district court.

As the majority opinion explains, the question before us is whether the district court abused its discretion in not reviewing the Appeal Panel's decision because there was an erroneous interpretation of the Settlement Agreement impacting the settlement as a whole. *Holmes Motors, Inc. v. BP Expl. & Prod.*, 829 F.3d 313, 315 (5th Cir. 2016). We answer that "yes." The remedy, then, is to send it back to the district court to review the case consistent with our analysis. *BP Expl. & Prod. Inc. v. Claimant ID 100094497*, 910 F.3d 797, 803 (5th Cir. 2018) (remanding to the district court even though the majority opinion (in the face of a dissenting opinion) decided a legal question); *see also In re Deepwater Horizon*, 632 F. App'x 199, 204 (5th Cir. 2015) (per curiam) (remanding where district court refused to review issues that would arise repeatedly); *cf. Claimant ID 100227611 v. BP Expl. & Prod.*, No. 18-30396, 2018 U.S. App. LEXIS 33357, at *6 (5th Cir. Nov. 28, 2018) (per curiam) (declining to overturn the refusal of discretionary review[1] when the case involved a decision on "the facts of a single claimant's case"); *see generally*

---

[1] While the legal question may be reviewed "de novo," even a "legal error" should not cause us to reverse a denial of discretionary review that involves just a single claim or does not negate relevant portions of the Settlement Agreement. In other words, whether a legal error is made is not discretionary but whether to grant discretionary review of a legal error is discretionary. Here, however, the district court's failure to address this glaring legal error involves the very heart of the Settlement Agreement, so denial of review was an abuse of discretion.

*Sanchez v. Young Cty.,* 866 F.3d 274, 279 (5th Cir. 2017) (per curiam) ("In deference to the trial court's responsibility to review the record in the first instance, we vacate and remand . . . ."). Yet the majority opinion does not.

Would a remand be based upon a mere technicality and, in turn, be a waste of time here because it is a purely legal question? No.

There are additional factual questions here. The question of whether the particular contractual "loss" approved by the Claims Administrator is fundable under the Settlement Agreement is, perhaps, a pure legal question. But West raises arguments concerning losses beyond the "do the math" arguments we rejected. If I were a factfinder, I would be unpersuaded by his arguments. But, as appellate judges, we are not factfinders in this case. Accordingly, we should remand to the district court to review and make any necessary determinations in the first instance (or, in turn, remand for factual investigation by the Claims Administrator), including determination of whether arguments were properly raised or forfeited.

The decision not to remand ignores the reality of how these Settlement Agreement cases proceed and the history of this specific case. Throughout the proceedings below, the question was whether the Claims Administrator, Appeals Panel, and District Court can or should "pierce the veil" of the claimant's application which, on its face, undeniably demonstrated a loss. At each stage, West successfully argued, "No, there should be no piercing," meaning he had no reason to provide evidence of any other theory of recovery; the whole point was that the document to which he attested stands as is. He prevailed repeatedly on that theory as numerous others had and still do. We have now, for the first time, found a case that we only theorized about in earlier decisions, the "implausible" causation case ("implausible" being a nice way of putting it here). *See In re Deepwater Horizon*, 744 F.3d 370, 377–78 (5th Cir.

2014).  But that case specifically stated: "The claims administrator, parties, and *district court* can resolve real examples of implausible claims as they resolve other questions that arise in the handling of specific claims."  *Id.* (emphasis added).  Nothing in that opinion suggested making the Fifth Circuit the factfinder.

Indeed, BP has stipulated that causation arguments are preserved in this context.  The stipulation states: "BP and Class counsel further agree that, for any Deepwater Horizon Court-Supervised Settlement Program appeal, request for discretionary review, *or appeal to the Fifth Circuit Court* in which the attestation issue is raised, the Claimant will be deemed to have preserved, and not waived, any argument that BP is estopped from challenging the attestation . . . , as well as *any other appropriate argument and/or objection relevant to the question of causation.*" (emphasis added).  BP acknowledged that stipulation in its briefing to the Appeals Panel in this very case: "Pursuant to the stipulation entered into between BP and the Class . . . , BP is preserving [the attestation requirement] issue for further review but does not brief it further herein."  BP's footnote to that statement suggests that it did not expect West to address this argument.  This case is thus not one of the "mine-run" of forfeiture or waiver cases where a litigant should have raised an issue sooner but failed to do so.[2]

Finally, perhaps for the above reasons, BP did not request that we "reverse and render."  It only asked for a remand: "For the foregoing reasons, the district court's denial of discretionary review should be reversed and

---

[2]  Indeed, the entire record on appeal is very thinly developed beyond BP citing to articles about the contract in question, and West not denying the fact of the contract but arguing its irrelevance.  BP itself put into evidence the article West relies upon to show that he had a potential for a future lucrative contract.  Thus, the thin record provides some support for West's argument.

remanded."  "[A] party is bound by, or limited to, the relief it seeks on appeal." *Whitehead v. Food Max, Inc.*, 163 F.3d 265, 270 (5th Cir. 1998); *see also Holloway v. Purvis*, 680 F. App'x 282, 286 (5th Cir. 2017) ("[O]ur precedent states that parties are limited to the relief requested in their briefs.")  Thus, we must remand, not render.

In sum, our usual course is to remand to the district court to resolve outstanding factual issues and failing to do so on this procedural history is particularly inappropriate.  Our precedent also requires that we not grant more relief than requested by rendering when only remand was sought.  I would reverse and remand to the district court.  Because the majority opinion leaves out this important step, I respectfully dissent from that portion of the opinion and resulting judgment.