## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30676

CLAIMANT ID 100025887,

Requesting Party - Appellant

v.

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Objecting Parties - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**
July 8, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-3786

Before OWEN, SOUTHWICK, and HIGGINSON, Circuit Judges

PER CURIAM:*

This is a claim under the Settlement Program created in the wake of the Deepwater Horizon disaster. The district court denied discretionary review of an appeal panel decision. The district court's interpretation of the Settlement Agreement in a prior request for review controls and there are no circumstances that warranted that court's review. AFFIRMED.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30676

## FACTUAL AND PROCEDURAL BACKGROUND

We have previously detailed the facts surrounding the Deepwater Horizon disaster that discharged enormous volumes of oil into the Gulf, the Settlement Agreement that was laboriously negotiated, and the claims process for business economic loss claimants. *See In re Deepwater Horizon* (*Deepwater Horizon I*), 732 F.3d 326, 329-30 (5th Cir. 2013); *see also In re Deepwater Horizon*, 785 F.3d 1003, 1007 (5th Cir. 2015) (explaining the claims administration process). The claimant here, SJM Investment, LLC operated a hotel on the Mississippi Gulf Coast at the time of the Deepwater Horizon incident. It submitted a business economic loss claim to the Settlement Program in June 2015.

The Settlement Agreement divides the areas affected by the disaster into zones that are labeled A-D. SJM is located in Zone C. To recover under the Settlement Agreement, SJM was required to meet one of multiple causation tests that compare a Zone C claimant's revenue from specific pre- and post-disaster periods, referred to as the Benchmark and Compensation Periods, respectively. The Claims Administrator found SJM did not satisfy any of the relevant tests and denied the claim. An appeal panel affirmed that denial, and the district court refused discretionary review.

SJM's appeal concerns only one of the steps under one of the failed causation tests. The particular causation test at issue is called the Decline-Only Revenue Pattern Test. The particular step we are concerned with is the Customer Mix test. The Settlement Agreement describes the Customer Mix test as requiring a claimant to show either (1) "a decline of 10% in the share of total revenue generated by non-local customers" from the Benchmark Period to the Compensation Period or (2) "a decline of 10% in the share of total revenue generated by customers located in Zones A-C" from the Benchmark Period to the Compensation Period if the claimant has customers in those zones.

2

No. 18-30676

Because both evaluations under the Customer Mix test rely on the geographic classification of a claimant's customers, it is critical to the test's administration that a claimant identify its customers' addresses. To deal with instances in which a claimant is unable to provide addresses for its customers, the Claims Administrator adopted Policy 345 v.3. It states:

> For the purposes of performing the Customer Mix Test, revenue generated during the Benchmark Period from customers whose address is considered unknown will be excluded from the claimant's share of revenue generated by non-local customers or customers located in Zones A-C; conversely, revenue generated during the Compensation Period from customers whose address is considered unknown will be included in the claimant's share of revenue generated by non-local customers or customers located in Zones A-C.

Here, SJM gave the Claims Administrator addresses and revenues associated with over 4,000 customers who transacted business with SJM in and around the relevant Benchmark and Compensation Periods. We will call this data the "Customer Mix information." The Claims Administrator conducted a "Matching Review" in which it compared SJM's Customer Mix information with its profit and loss statements ("P&Ls"). The Claims Administrator found P&Ls indicating transactions that were not reflected in the Customer Mix information. The Claims Administrator considered these transactions as unknown for the Customer Mix test and treated them as the above-quoted Policy required for unknown addresses. The Claims Administrator also analyzed SJM's Customer Mix information using a mapping software to verify addresses. It was unable to verify some of the addresses of SJM's customers and it considered them as unknown for the Customer Mix test also. These are the two actions with which SJM takes issue.

No. 18-30676

DISCUSSION

We review the district court's denial of discretionary review of Settlement Program claims for abuse of discretion. *BP Expl. & Prod., Inc., v. Claimant ID 100281817*, 919 F.3d 284, 287 (5th Cir. 2019). The district court abuses its discretion when the case "raises a recurring issue on which the Appeal Panels are split [and] the resolution of the question will substantially impact the administration of the Agreement" or "the decision not reviewed . . . actually contradicted or misapplied the Settlement Agreement, or had the clear potential to [do so]." *Id.* (citations omitted). When the determination involves a "purely legal question[] of contract interpretation" of the Settlement Agreement, our "review is effectively de novo" because errors of law are necessarily abuses of discretion. *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).

There is some tension between the effectively-*de-novo* standard and our statement elsewhere "that it is 'wrong to suggest that the district court must grant review of *all* claims that raise a question about the proper interpretation of the Settlement Agreement.'" *Claimant ID 100212278 v. BP Expl. & Prod., Inc.*, 848 F.3d 407, 410 (5th Cir. 2017) (citation omitted). It is clear, though, that the district court does not abuse its discretion to deny review where there is "no pressing question of how the Settlement Agreement should be interpreted" or where review would be of "a discretionary administrative decision" that turns on "the facts of a single claimant's case." *Id.* (citation omitted).

I.    *The Matching Review Process*

SJM argues the Matching Review process is not "part of the Settlement Agreement or any applicable policy." Further, "[n]owhere in the text of the Settlement nor Policy 345 [v.3] does it read that the amounts in the Customer

No. 18-30676

Mix information need to match those of the Claimant's P&Ls." SJM describes multiple appeal panels that have agreed with its assertion that the Customer Mix information does not have to reconcile with a claimant's P&Ls. SJM is correct that appeal panel decisions from June 2015 and March 2017 sustain its position, and when considered in relation to the January 2018 appeal panel in the instant case, create a split.

The appeal panel here, however, followed a May 2017 decision by the district court in which it answered SJM's arguments in the review of another claim. *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, slip op. at 5 n4 (E.D. La. May 5, 2017).[1] The district court held that "'[t]otal revenue' means the revenue recorded on the claimant's profit and loss statements for the selected period, not just the revenue for which the claimant is able to produce Customer Mix data." *Id.* The district court interpreted this to permit the Claims Administrator to treat revenues associated with customers of unverifiable locations as unknown. *See id.* at 4-5. Thus, the district court already interpreted the Settlement Agreement with regard to this issue. We will examine that interpretation.

Despite the complexity and many parties involved, the Settlement Agreement is a maritime contract to which we apply the familiar rules. *See In re Deepwater Horizon* (*Policy 495 Decision*), 858 F.3d 298, 302-03 (5th Cir. 2017). A panel of this court held that the Settlement Agreement's contemplation of total revenue means "'total revenue' full stop." *Claimant ID 100227611 v. BP Expl. & Prod., Inc.*, 757 F. App'x 295, 299 (5th Cir. 2018). We accept that as an accurate interpretation. We see no error in the district court's

---

[1] http://www.deepwaterhorizoneconomicsettlement.com/docs/Discretionary_Review.pdf (navigate to page 443).

determination that total revenue can be measured by the revenue recorded on a claimant's P&Ls.

Further, the Settlement Agreement does not expressly contemplate the treatment to be given a claimant's Customer Mix information when that data does not correspond to the claimant's total revenues. It is consistent with the Settlement Agreement, though, to hold the absence of evidence about revenues against the claimant. Indeed, "[w]ithout this safeguard, a party could cherry pick customer information in order to satisfy the test." *Claimant ID 100187576 v. BP Expl. & Prod., Inc.*, 760 F. App'x 349, 352 (5th Cir. 2019). SJM presents only unsupported statements that this will, in the usual case, preclude recovery. We agree "that adverse treatment based on discrepancies between P&Ls and Customer Mix Data is permissible under the Settlement Agreement." *Claimant ID 100241914 v. BP Expl. & Prod., Inc.*, 766 F. App'x 5, 12 (5th Cir. 2019).

SJM also argues the Matching Review process is inconsistent with Policy 345 v.3. That Policy, though, provides examples of how the Customer Mix test is to be applied. It indicates that "Total Revenues Reported in P&Ls" form the basis of the Customer Mix test with differences between the P&Ls and Customer Mix information to be considered as unknown.

There is no operative split between panels, and the Appeal Panel here did not misapply the Settlement Agreement nor Policy 345 v.3 when it permitted the Matching Review process.

II.     *Settlement Program Verification of Customer Mix Information*

SJM's second contention is that the Claims Administrator undertook "an incomplete and deficient analysis of the provided customer mix documentation" by "gerrymander[ing]" and "ignor[ing] or overlook[ing] dozens of transactions which were later recorded as unknown." SJM complains of, for

No. 18-30676

instance, the Claims Administrator's treatment of "minor typographical errors" and "deficient location software."

In our view, the Claims Administrator validly followed Policy 345 v.3. SJM suggests that the verification process does not comport with the Settlement Agreement and its implementing documents, but SJM does not specify how other than to refer to "the claimant friendly principles of the Settlement" and the relevant review guidelines. We do not characterize the Settlement Agreement as claimant-friendly or otherwise. Our task is to determine whether there was something in the decision-making that required the district court to grant review. To the extent SJM contests the Claims Administrator's handling of its Customer Mix information in the adjudication of this particular claim, it "simply raise[s] the correctness of a discretionary administrative decision in the facts of a single claimant's case." *Claimant ID 100212278*, 848 F.3d at 410 (alteration in original) (citation omitted). That is precisely the sort of dispute for which the district court has discretion to deny review. *See id.*

AFFIRMED.