**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**
March 3, 2020

Lyle W. Cayce
Clerk

No. 19-30264

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA
PRODUCTION COMPANY; BP, P.L.C.,

> Requesting Parties - Appellants

v.

CLAIMANT ID 100191715,

> Objecting Party - Appellee

Appeal from the United States District Court
of the Eastern District of Louisiana

Before CLEMENT, HIGGINSON, ENGELHARDT, Circuit Judges.

KURT D. ENGELHARDT, Circuit Judge.

This appeal stems from the protracted *Deepwater Horizon* litigation. BP challenges the district court's order granting discretionary review and affirming a $77 million award against it. Because the district court did not consider investigating credible evidence of a sole, superseding cause for the Claimant's loss, we reverse and remand.

I.

After the April 20, 2010 Deepwater Horizon Oil Spill, BP negotiated and entered into the Economic and Property Damages Class Action Settlement

No. 19-30264

Agreement ("Settlement Agreement") to resolve the claims of those individuals and businesses who suffered damages as a result of the spill.

### *Relevant Provisions of the Settlement Agreement*

To participate in the Settlement Agreement, a claimant must first submit a "claim form." The claim form is signed under penalty of perjury and requires claimants to attest that their damage was due to the Deepwater Horizon disaster. *See In re Deepwater Horizon* (*Deepwater Horizon III*), 744 F.3d 370, 377 (5th Cir. 2014). Claimants who suffered a Business Economic Loss ("BEL") are classified into one of four geographic zones, which range from most impacted (Zone A) to least impacted (Zone D). Exhibit 4B to the Settlement Agreement addresses the causation requirements claimants must meet according to their assigned zone. It "provides for the use of proof of loss as a substitute for proof of causation." *Id.* at 375.

Some claimants are entirely exempt from presenting any evidence that their loss was caused by the spill. Claimants located in Zone D, such as the claimant here, must pass one of seven qualitative tests to demonstrate that their loss was caused by the oil spill. One of those tests is the "V-Shaped Revenue Pattern," which is demonstrated by: (a) a 15% or more drop in revenue in three consecutive months between May-December 2010 compared to the same months in other benchmark year(s), and (b) a 10% upturn in the same months in 2011 compared to 2010. Once causation is proved under Exhibit 4B, the Claims Administrator, as part of the Court Supervised Settlement Program ("CSSP"), calculates the amount of the award due under the formulae set forth in Exhibit 4C.

### *Claimant's award and BP's appeal*

Appellee, Trammo, Inc. ("Claimant"), filed its BEL claim under the Settlement Agreement on March 8, 2013. Claimant is a global commodities merchandiser that purchases and supplies ammonia and fertilizers around the

world. It has a distribution port in Zone D in Tampa, Florida, and its claim was based on alleged damages it suffered at that location. After it satisfied the "V-Shaped Revenue Pattern" in Exhibit 4B, Claimant was allotted $77,688,762.55 under the Settlement Agreement's award calculations.

BP unsuccessfully appealed the award to an appeals panel. It then sought discretionary review from the district court, which granted review but affirmed Claimant's award. Striking out below, BP finally appealed to this court. BP argues that Claimant passed the V-Shaped Revenue Pattern due solely to a price spike and drop in the price of fertilizer that was unrelated to the oil spill. According to BP, the spike caused Claimant's revenues to soar and crash back down to normal rates thereafter. And, only because Claimant used months during the price spike as its benchmark period was it able to satisfy the "V-Shape Revenue Pattern" test in Exhibit 4B. In other words, Claimant's loss was not due to the spill; rather, the price spike in fertilizer was the sole, superseding cause for its loss.[1] Claimant disputes BP's interpretation of the Settlement Agreement and maintains that because its revenue curve passed one of the tests in Exhibit 4B, it was not required to proffer any additional evidence that its loss was caused by the oil spill.[2]

---

[1] BP also argues that Claimant cannot recover because it cannot prove that it suffered a "loss," as defined in *BP Expl. & Prod., Inc. v. Claimant ID 100281817* (*West*), 919 F.3d 284 (5th Cir. 2019). *West's* majority opinion found that because the Settlement Agreement did not define the word "loss," the word's plain meaning controlled. *Id.* at 287. Thus, before the individual economic loss ("IEL") claimant in *West* was entitled to recompense, he was required to show that he suffered "unexpected diminutions in wages or other income that could otherwise support a claim for civil damages." *Id.* at 288. We decline to extend this "plain meaning" requirement beyond the type of IEL claim that was before this court in *West*. Therefore, BP's argument in this regard has no merit.

[2] After oral argument, Claimant filed a letter with the court purporting to identify instances where it sought to prove causation during proceedings before the Claims Administrator. The record cites are less than clear examples, and Claimant has otherwise consistently maintained that it "need not show any causal nexus under the Settlement Agreement" because it "fully met the requirements of Exhibit 4B."

No. 19-30264

II.

The interpretation of a settlement agreement is a question of contract law that is reviewed de novo. *Deepwater Horizon III*, 744 F.3d at 374 (citing *Waterfowl L.L.C. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006)). We recently confirmed that when the district court grants discretionary review and affirms the appeal panel, we review interpretive issues de novo. *Claimant ID 100081155 v. BP Expl. & Prod., Inc.,* 920 F.3d 925, 928 (5th Cir. 2019). While the standard of review is less clear for factual findings, we need not address that issue because this appeal turns on matters of legal interpretation only. *Claimant ID 100222322 v. BP Expl. & Prod., Inc.*, 773 F. App'x 775, 777 (5th Cir. 2019) (per curiam).

III.

The issue before us is a narrow one: is an investigation into a claimant's attestation required when BP presents credible evidence that the purported loss is not due to the spill but a sole, superseding cause?

The appeals panel answered in the negative. The district court did not specifically consider the issue but affirmed without qualification the appeals panel decision, which found that (1) Claimant "satisfied the requirements of Exhibit 4B of the Settlement agreement and that is all that [was] required of it"; and (2) BP's "alternative causation argument [has been] soundly rejected in recent federal court pronouncements interpreting the requirements of the Settlement Agreement."

To the contrary, we recognized that such an investigation may be warranted in one of our earliest decisions in the *Deepwater Horizon* progeny*, Deepwater Horizon III*. 744 F.3d at 377–78. There, we held that causation was "certainly subordinated" in the Settlement Agreement and we therefore refused to impose a gatekeeping function on the CSSP. *Id.* However, we also caveated that not "all claims must be accepted no matter how clear the absence

4

of the required nexus may be." *Id.* at 378. We left open the possibility that "real examples of implausible claims" could be resolved by "[t]he claims administrator, parties and district court… as they resolve other questions that arise in the handling of specific claims." *Id.*

But it was not until 2019, in *West*, that we found an example of such an "implausible claim." 919 F.3d at 288. We vacated the award in *West* after finding that the "loss" the claimant suffered was not caused by the spill but was instead due solely to the front-loaded compensation scheme in his employment contract. *Id.* at 288—89. *West* was followed shortly thereafter by *BP Expl. & Prod., Inc. v. Claimant ID 100141850* (*Howard Industries),* 919 F.3d 887 (5th Cir. 2019) (per curiam). Though it did not exist in *Howard Industries*, we advised that "credible evidence of a sole, superseding cause for a claimant's loss" may warrant "an investigation into the plausibility of the attestation." *Id.* at 891. Since *Howard Industries*, we have remanded two other claims for consideration of whether there was a sole, superseding cause of the claimant's purported loss. *BP Expl. & Prod., Inc. v. Claimant ID 100238083*, 778 F. App'x 296, 297 (5th Cir. 2019) (per curiam); *BP Expl. & Prod., Inc. v. Claimant ID 100296061*, 777 F. App'x 772 (5th Cir. 2019) (per curiam).

Thus, reversal is warranted because the appeal panel's categorical rejection of credible evidence of a sole, superseding cause stands in conflict with this court's precedent. In addition, the district court's decision was made without the benefit of our recent guidance on causation in *West* and *Howard Industries*. Because the district court has not considered whether there was credible evidence of a sole, superseding cause and because we are not the factfinder, the district court should review this argument in the first instance and determine whether to remand to the Claims Administrator for additional factfinding.

No. 19-30264

## IV.

Finally, we emphasize that the reach of today's holding is limited: an investigation into the plausibility of a claimant's attestation is required only when BP presents credible evidence of a sole, superseding cause. Accordingly, we REVERSE the district court's order and REMAND for proceedings consistent with this opinion.